UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MANNING ROLLERSON, | § § | |
| Plaintiff. | § § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00235 |
| PORT FREEPORT and UNITED STATES ARMY CORPS OF ENGINEERS, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Manning Rollerson ("Rollerson") filed this suit against the Brazos River Harbor Navigation District of Brazoria County n/k/a Port Freeport (the "Port") and the United States Army Corps of Engineers (the "Army Corps"). Before me is The United States Army Corps of Engineers' Motion to Dismiss ("Motion to Dismiss"). *See* Dkt. 37. After reviewing the record and the law, I **RECOMMEND** that the Army Corps's Motion to Dismiss (Dkt. 37) be **GRANTED**.

### BACKGROUND

I recently issued a Memorandum and Recommendation ("M&R") addressing a Rule 12(b)(6) motion filed by the Port. *See Rollerson v. Port Freeport*, No. 3:18-CV-00235, 2019 WL 4394584 (S.D. Tex. Sept. 13, 2019). In the M&R, I set forth specific facts as pled in Plaintiff's Second Amended Complaint ("Second Amended Complaint"). *See id.* at *1. Because the Army Corps's Motion to Dismiss concerns the Second Amended

Complaint, I incorporate by reference my previous recitation of the facts involved in this case. I assume all well-pled facts as true and view those facts in the light most favorable to Rollerson. I add the following alleged facts from the Second Amended Complaint that are relevant to the disposition of the Army's Corps's Motion to Dismiss.

Rollerson alleges that the Freeport Harbor Channel Improvement Project (the "Port's Expansion Project") is funded in part by the Army Corps. Rollerson contends that he filed an Administrative Complaint with the Army Corps, complaining that the Port's Expansion Project did not comply with Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq. See* Dkt. 36 at 43–45. After the Army Corps denied his Administrative Complaint, Rollerson filed this suit. Rollerson asserts two claims against the Army Corps under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.* In Count I, Rollerson challenges the Army Corps's recent denial of his Administrative Complaint, which alleged the Port's violation of Title VI. Based on Count I, Rollerson seeks the following remedy: "a declaration that the [Army Corps] failed to carry out a statutorily required or purely ministerial act by refusing [his] Administrative Complaint" and a judgment compelling the Army Corps "to stop funding [the Ports' Expansion Project]" and "to provide oversight of the Port's land acquisition practices to ensure [they are] in accordance with the Uniform Act." *Id.* at 45. In Count II, Rollerson challenges the Army Corps's alleged failure to enforce Title VI and the Uniform Relocation Assistance and Real Property Acquisition Policy Act ("URA"), 42 U.S.C. § 4601 *et seq. See id.* at 46–48. Rollerson's requested remedy under Count II is virtually the same remedy he describes under Count I. The only difference is Rollerson seeks to add a line in the

2

declaration stating that the Army Corps also violated the APA by "continuing to fund [the Ports' Expansion Project] with federal funds." *Id.* at 48.

The Army Corps has moved to dismiss both claims under Rule 12(b)(1) and Rule 12(b)(6).

## MOTION TO DISMISS STANDARD

### A. Rule 12(b)(1)

A court must dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Subject matter jurisdiction fails if the plaintiff lacks Article III standing. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986). Therefore, when a plaintiff lacks standing to sue in federal court, it is appropriate to dismiss the action pursuant to Rule 12(b)(1) for want of subject matter jurisdiction. *See Chair King, Inc. v. Hous. Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997).

### B. Rule 12(b)(6)

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). Under Rule 12(b)(6), a party may "move for dismissal for a failure to state a claim upon which relief can be granted." *Lemieux v. Am. Optical Corp.*, 712 F. App'x 409,

3

412 (5th Cir. 2018) (internal quotation marks omitted). "The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Lowrey v. Tex. A&M Univ. Syst.*, 117 F.3d 242, 247 (5th Cir. 1997).

Dismissal is appropriate "when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). However, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks and citation omitted). "Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

### A. COUNT I: THE APA AND TITLE VI

The APA provides judicial review for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Notwithstanding this broad definition, the APA limits the sort of agency actions to which it applies. Specifically, the statute requires that the challenged act be an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* § 704. Section 704 reflects Congress's intent that "the general grant of review in the APA [not] duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).

4

The United States Supreme Court has explained that, at a minimum, the alternative remedy must provide the individual seeking relief "specific procedures" by which the agency action can receive judicial review or some equivalent. *Id.* at 903. "The adequacy of the relief available need not provide an identical review that the APA would provide, so long as the alternative remedy offers the same genre of relief." *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018) (internal quotation marks and citation omitted) (collecting cases). *See also Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012). "The relevant question under the APA . . . is not whether [the alternatives to APA relief] are as effective as an APA lawsuit against the regulating agency, but whether the private suit remedy provided by Congress is adequate." *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009). In other words, "[t]his determination appears to hinge on whether the alternative statutory remedies are 'adequate' to redress the injury alleged, although the alternative need not be 'more effective' than APA review." *Sanchez v. Clinton*, No. CIV.A. H-11-2084, 2012 WL 208565, at *4 (S.D. Tex. Jan. 24, 2012). For this reason, "[c]ourts have held that where the complainant is entitled to de novo review in district court on the merits of his underlying claim (regardless of the outcome of an agency's investigation of that claim), the complainant has an 'other adequate remedy in a court' and cannot challenge the agency's procedural errors through a suit brought pursuant to the APA." *MacKenzie v. Castro*, No. 3:15-CV-0752-D, 2017 WL 1021299, at *8 (N.D. Tex. Mar. 16, 2017) (collecting cases). Nonetheless, the adequate alternative remedy inquiry "entails a case-specific evaluation." *Hinojosa*, 896 F.3d at 310.

Rollerson argues that the Army Corps's denial of his Administrative Complaint constitutes a final agency action and, therefore, I may review the Army Corps's decision pursuant to the APA. The Army Corps does not contest that its denial of Rollerson's Administrative Complaint constitutes a final agency action with respect to Title VI. Instead, the Army Corps argues that Rollerson cannot use the APA to indirectly challenge the Port's alleged discriminatory actions because "Title VI itself provides [Rollerson] an adequate alternative remedy." Dkt. 37 at 22. I agree with the Army Corps.[1]

Here, Rollerson seeks to remedy the Port's allegedly discriminatory actions taken in violation of Title VI. Title VI states:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. The Supreme Court has found that Title VI provides a private cause of action to individuals to remedy intentional discrimination, but not discrimination based on a disparate impact theory. *See Alexander v. Sandoval*, 532 U.S. 275, 280–93 (2001). As explained by the D.C. Circuit, "APA review is unavailable where there is a private cause of action against a third party otherwise subject to agency regulation." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d

---

[1] In addition to this subject matter jurisdiction argument under Rule 12(b)(1), the Army Corps has also advanced several other arguments under Rule 12. In accordance with clear Fifth Circuit precedent, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Because I find the Army Corps's jurisdictional argument dispositive, I do not recite or reach the Army Corps's other Rule 12 arguments.

6

1265, 1270–71 (D.C. Cir. 2005) (collecting cases). Consistent with that holding, federal courts across the country have found that plaintiffs in the Title VI context have an adequate alternative remedy that precludes suits brought under the APA: they can sue the alleged wrongdoer directly. *See, e.g., Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191–92 (4th Cir. 1999) ("[W]e think that [the] direct remedy against funding recipients is not only 'adequate,' but . . . is preferable to a direct suit against the agency itself."); *Wash. Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993) (holding "an adequate remedy is available to appellants, and . . . appellants have no cause of action under the APA for the discrimination alleged" because appellants could bring a direct Title VI action against the discriminating institution); *Women's Equity Action League v. Cavazos (WEAL)*, 906 F.2d 742, 750–51 (D.C. Cir. 1990) (holding that plaintiffs' direct "rights of action against federally-funded institutions to redress discrimination proscribed by Title[] VI" were "preclusive of a default remedy under the APA" because "a statutory remedy specifically against the discriminating entity [was] 'adequate'"); *Wasseff v. Nat'l Inst. of Health*, No. CV 16-703, 2017 WL 495795, at *18 (E.D. Pa. Feb. 6, 2017) (holding Title VI provides an avenue for relief, precluding any APA claim); *Caldwell v. Knox Cty. Bd. of Educ.*, No. 3:13-CV-552, 2014 WL 3735840, at *6 (E.D. Tenn. July 29, 2014) (holding "a direct Title VI suit . . . precludes review . . . under the APA"); *Pratt v. Office of Civil Rights*, No. CV-12-01821-PHX-JAT, 2014 WL 1628570, at *2 (D. Ariz. Apr. 23, 2014) (dismissing plaintiff's APA claim because plaintiff had another adequate remedy "by pursuing a claim of discrimination [under Title VI] directly against the alleged offender"); *Sherman v. Black*, 510 F. Supp. 2d 193, 198 (E.D.N.Y. 2007) ("This right of

action [under Title VI] is adequate to redress his claims of alleged discrimination and therefore precludes a remedy under the APA."); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 348 F. Supp. 2d 398, 423 (D. Md. 2005) (holding that due to the availability of an adequate alternative remedy, a direct suit against the wrongdoer, "[p]laintiffs cannot here assert Title VI-based claims against Federal Defendants via the APA").

Rollerson contends that although Title VI only provides a private cause of action for intentional discrimination, actions having an unjustifiable disparate impact on minorities are redressable through agency regulations designed to implement the purposes of Title VI. Rollerson argues that because the Army Corps has promulgated such regulations, he has no means other than the APA to ensure that the Army Corps is appropriately enforcing the disparate impact related regulations. Next, Rollerson argues that Title VI does not provide an adequate remedy because "there are no appellate rights built into the [Army Corps's] Title VI regulatory process to address the federal agency's noncompliance with [its disparate impact regulations]." Dkt. 38 at 20. Last, Rollerson argues that a Title VI suit against the Port "will do nothing to remedy lax enforcement by the [Army Corps] of its obligations under . . . Title VI and the URA." *Id.* at 21.

In my view, Rollerson's arguments all boil down to his mere dissatisfaction with the fact that a direct Title VI suit against the Port will not be as effective as an APA lawsuit against the Army Corps. This is not persuasive because, as explained above, "[t]he relevant question under the APA . . . is not whether [the alternatives to APA relief] are as effective as an APA lawsuit against the regulating agency, but whether the private suit remedy provided by Congress is adequate." *Garcia*, 563 F.3d at 522. With respect to Title VI,

8

Congress has expressly authorized the type of private suit that it found appropriate for judicial consideration of compliance with Title VI—Rollerson may bring suit directly against the Port, the entity he claims discriminated against him.[2] Even though suits against individual institutions "cannot redress the systemic lags and lapses by federal monitors" and "may be more arduous, and less effective in providing systemic relief, than continuing judicial oversight of federal government enforcement," *WEAL*, 906 F.2d at 751, "those private suits [a]re 'the only court remedy Congress has authorized for private parties,' thereby foreclosing APA review," *Doe v. United States Dep't of Health & Human Servs.*, 85 F. Supp. 3d 1, 10 (D.D.C. 2015) (quoting *WEAL*, 906 F.2d at 751). And "[t]his Court may not contradict Congress' mechanism for enforcing the law." *Doe*, 85 F. Supp. 3d at 11.

In light of Congress' clear Title VI enforcement mechanism and the overwhelming authority finding that Title VI provides an adequate remedy to address Rollerson's injuries, I find that Title VI provides an adequate alternative remedy. Accordingly, I "lack[] jurisdiction under § 704 to adjudicate this claim." *MacKenzie*, 2017 WL 1021299, at *8.

## B.   COUNT II: THE APA AND URA

In Count II, Rollerson contends that the URA affords him certain pre-deprivation rights that are reviewable pursuant to the APA. Among other arguments, the Army Corps contends that I do not have subject matter jurisdiction to consider Rollerson's URA claim

---

[2] In Count III of the Second Amended Complaint, Rollerson brought a Title VI claim directly against the Port. Count III was the subject of the Port's motion to dismiss, which I resolved in my previous M&R. *See Rollerson*, 2019 WL 4394584.

because he has failed to allege a final agency action under Section 704 of the APA. *See*

Dkt. 37 at 29. Because I find that this jurisdictional issue is dispositive, I do not reach the

Army Corps's other arguments.

> The URA[, 42 U.S.C. § 4601 *et seq*,] consists of three subchapters. Subchapter I (§§ 4601–4605) is entitled "General Provisions." Subchapter II (§§ 4621–4638) is entitled "Uniform Relocation Assistance," and relates to moving expenses and replacement housing for homeowners and tenants who are displaced by federal land acquisition. Subchapter III (§§ 4651–4655), . . . is entitled "Uniform Real Property Acquisition Policy." It creates guidelines for federal agencies to apply in land acquisition proceedings.

*Pac. Shores Prop. Owners Ass'n v. Fed. Aviation Admin.*, 2014 WL 985960, at *7 (N.D.

Cal. Mar. 7, 2014).

The URA does not create a private right of action for money damages. *See Delancey v. City of Austin*, 570 F.3d 590, 592 (5th Cir. 2009) ("[W]e hold that the URA does not provide a private right of action for monetary damages."). "However, a plaintiff may nonetheless challenge an action regarding the URA's relocation provisions through the APA." *Alamo Aircraft Ltd. v. City of San Antonio*, No. 5:15-CV-00784, 2016 WL 5720860, at *2 (W.D. Tex. Sept. 30, 2016) (collecting cases). As explained above, the APA provides that only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Given that there is no statutory right of action related to the URA, Rollerson's APA claim relies solely on Section 704's final agency action exception. A "final agency action" is the "consummation of the agency's decisionmaking process" and gives rise to legal rights or creates legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citation omitted). *See also, Sierra Club v.*

*Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) ("Final agency actions are actions which (1) 'mark the consummation of the agency's decisionmaking process,' and (2) 'by which rights or obligations have been determined, or from which legal consequences will flow.'" (quoting *Bennett*, 520 U.S. at 178)).

According to Rollerson's Second Amended Complaint, he expressly brings Count II "[u]nder Subchapter II of the [URA]." Dkt. 36 at 46. As explained by one court, "Subchapter II directs the head of any displacing agency to provide certain monetary and advisory relocation assistance benefits to displaced individuals and businesses." *Clear Sky Car Wash, LLC v. City of Chesapeake*, 910 F. Supp. 2d 861, 875 (E.D. Va. 2012). Rollerson has not alleged any final action taken by the Army Corps that concerns his entitlement to monetary and advisory relocation assistance benefits under the URA. To be clear, the Army Corps's letter denying Rollerson's Administrative Compliant concerns only Title VI, meaning it simply does not constitute the "consummation of the [Army Corps's] decisionmaking process" concerning the URA. *Bennett*, 520 U.S. at 177–78. The only other potential final agency actions alleged by Rollerson are (1) the Army Corps's continued funding of the Port's Expansion Project, and (2) the Army Corps's alleged failure to properly oversee and ensure that the Port's Expansion Project complied with the URA. Neither of these constitute a final agency action. *See Alamo Aircraft*, 2016 WL 5720860, at *2 (holding that "providing funding" and lack of oversight do not constitute final agency actions). *See also Clear Sky Car Wash LLC v. City of Chesapeake*, 743 F.3d 438, 445 (4th Cir. 2014) ("At most, the complaint here suggests only arguably that the [federal agency] should have monitored the City's conduct more closely and required it to

11

comply with [the URA]. But such ongoing oversight does not amount to final agency action under § 704.").

In sum, because Rollerson has not challenged any identifiable final agency action, I also lack jurisdiction under Section 704 to adjudicate Rollerson's APA claims related to the URA.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Army Corps's Motion to Dismiss (Dkt. 37) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 21st day of October, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE